IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID LUGO, | ) | |
| | ) | Case No. 23 CV 01738 |
| Plaintiff, | ) | |
| | ) | Hon. LaShonda A. Hunt |
| vs. | ) | |
| | ) | Magistrate Judge Daniel P. McLaughlin |
| | ) | |
| REYNALDO GUEVARA, et al. | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO CONDUCT ADDITIONAL
DISCOVERY AFTER THE NOVEMBER 29 DISCOVERY DEADLINE**

Defendants, by their undersigned attorneys and pursuant to this Court's Order dated October 24, 2024, respectfully submit this joint motion seeking a three-month extension of time, to February 28, 2025, to conduct the items of fact discovery enumerated below. In support the parties state as follows:

*Factual Background*

1. Plaintiff David Lugo was arrested, prosecuted, and convicted for the 1991 murder of sixteen-year-old Michael Velez, who was shot repeatedly before dying while riding his bike near the intersection of Palmer and Hamlin Avenues in Chicago, IL. (*See* Am. Compl., Dkt. 61, ¶¶ 20–21, 23, 32.) The victim gave a dying declaration identifying "Malo" as the shooter (Plaintiff's nickname as an Imperial Gangster), and two eyewitnesses (Efrain and Julio Sanchez) identified Plaintiff as the shooter.

2. Lugo was deposed earlier this week on November 19, 2024. Lugo admitted in his deposition that two days after Velez's murder, Lugo evaded arrest and violated his probation for two other felonies by leaving Chicago on an Amtrak ticket to New York under a different name.

Lugo remained in New York with his aunt and his brother—Ralph Lugo, Jr.—until September. According to his deposition testimony, Lugo returned to Chicago on September 7, 1991, and spent the evening at the home of his friend Anthony Anderson along with Gidget Ruiz (deceased) and Bridget Klytta. Lugo presented no alibi defense at his criminal trial and to this day—including in his deposition—has been unable to explain where he was at the time of the murder.[1]

3.  On September 8, 1991, Plaintiff was arrested. Lugo was ultimately convicted of first-degree murder. On July 8, 2022, the Cook County State's Attorney's Office ("CCSAO") vacated his conviction, and on August 9, 2022, the CCSAO moved for *nolle prosequi* of the charges. (*Id.* at ¶¶ 76–77.)

4.  Plaintiff then filed an 11-count complaint against six former Chicago Police Department officers claiming, among other things, that Defendants withheld exculpatory evidence in violation of *Brady,* fabricated evidence in violation of his Fourteenth Amendment due process rights, and unlawfully detained and maliciously prosecuted Plaintiff. (*See generally id.* at ¶¶ 118–147.) Plaintiff also brought a *Monell* claim against the City of Chicago and a string of state law and derivative claims against the Individual Defendants. (*See generally id.* at ¶¶ 148–185.)

5.  At the heart of this case is Plaintiff's allegations that the two eyewitnesses who identified Plaintiff as the shooter—Julio and Efrain Sanchez—were coerced and/or tainted by Defendant Officers into making the identification. Both witnesses identified Plaintiff by photo and later from a live lineup. Efrain testified at Plaintiff's trial and identified him as the shooter,

---

[1] The only exception is a police report reflecting a September 8, 1991 interview in which Plaintiff provided his alleged whereabouts for the night of the murder. Defendants contend that this interview occurred. Plaintiff contended in his deposition that it never occurred, and the report was fabricated by police. Ironically then, the only alibi ever attributed to Plaintiff is credited to Defendant Halvorsen, who Plaintiff alleges here framed him for murder.

2

while Julio did not testify at Plaintiff's trial in 1993. Since Plaintiff's 1993 conviction, Efrain Sanchez signed a recant affidavit in 1993, followed by Julio in 1998. (*See*, Ex. A and B, respectfully.) For the first time in Plaintiff's deposition, Lugo admitted that he spoke with Julio at Cook County Jail prior to Julio refusing to cooperate with the prosecution at Lugo's trial; and that he spoke to both Julio and Efrain in person while in prison prior to them signing their recant affidavits. The cornerstone of Plaintiff's constitutional claims is the alleged coercion of Julio and Efrain and in turn, the impetus for Efrain and Julio changing their story is a primary focus of discovery.

### *Discovery to Date*

6. The parties have worked diligently to move this case forward, conducting extensive discovery as delineated below.

7. All six Defendants and Plaintiff issued written discovery and have had multiple Rule 37.2 discussions among the parties regarding the responses, which has facilitated supplemental responses. These discussions—while time consuming—allowed the parties to reach agreements on many issues without court intervention, leaving only certain narrowed matters between the City and Plaintiff to progress to court intervention.

8. The parties have disclosed scores of documents and the record in this case spans more than thirty years. Defendants have disclosed over 30,000 pages of records, including the CPD investigative and records division file, photographs from the underlying incident, criminal history records of Plaintiff, and the Circuit Court of Cook County files. Plaintiff disclosed approximately 13,477 pages of records, approximately 1,000 of which Plaintiff produced in the late afternoon of November 18, 2024 (less than 48 hours prior to the related witness that was to be deposed).

3

9. The parties have issued record subpoenas to various entities. Thus far, the parties have received over 400,000 pages of records in response to these subpoena requests. The parties have received responses from (1) the Cook County Department of Corrections, (2) the Cook County Public Defenders, (3) the Cook County State's Attorney's Office, (4) Exoneration Project ("EP"), (6) the Illinois Department of Corrections ("IDOC") and (7) the Illinois State Police ("ISP"). [2]

10. While reviewing these voluminous sets of records spanning more than three decades, the parties have encountered significant obstacles obtaining full access to certain records. One initial impediment was getting rulings on the parties contested Confidentiality Order and Medical and Mental Health Protective Order. As noted in the parties' first, and to date only, motion to extend discovery there was a delay from the time the motions were fully briefed to having them adjudicated and entered. (Dkt. 99 at ¶¶ 4-7.) Without these Orders, multiple entities would not provide complete productions to the parties. The Confidentiality and Medical and Mental Health Protective Orders in this case were ultimately entered on May 1, 2024. (Dkt. 97.)

11. Upon entry of the Orders and forthcoming productions of records, the parties were required to engage in extensive Rule 37.2 conferences with the Cook County State's Attorney's Office as noted in prior Joint Status Reports. (Dkts. 123, 131, 136.) Despite diligent efforts on the part of Defendants, the CCSAO still has not complied with its obligations and Defendants will be filing a motion to compel prior to the November 29 closure date.

---

[2] The following subpoenas remain outstanding, 1) Illinois Department of Corrects for records pertaining to: Joel Valentin and Julio Sanchez; (2) Walgreens; (3) Komed Holman Health Center; (4) 7-Eleven, Inc.; (5) Winfield Moody Health Center; (6) North Kostner Health Center; and (7) Cook County Department of Correction for records pertaining to David Perez.

12. Additionally, the Defendants have been engaged in extensive Rule 37.2 discussions with the Illinois Department of Corrections over its subpoena response, albeit with slightly more success than with CCSAO. After multiple rounds of conferences, and a July 29, 2024, status hearing before Judge Appenteng, IDOC agreed to amend its production and produced a new set of records. Defendants received this supplemental production on October 10, 2024. The production was a complete reproduction of the file, which necessitated Defendants going page by page and line by line to determine what new information had been unredacted. However, after careful review and additional conferences with IDOC's counsel, the revised production is still insufficient. Defendants intend to file a motion to compel IDOC to remove additional redactions and produce additional records by the November 29 closure date.

### *Depositions*

13. All parties have sat for their respective depositions. To date, 17 depositions in total have been taken in this matter. Three additional depositions are scheduled and will be proceeding next week prior to the close of fact discovery. Both Plaintiff and Defendants have additional depositions which they are seeking leave to take after November 29.

### *Defendants' Remaining Discovery*

14. Originally, Defendants requested in early September that they take the deposition of Plaintiff in October. However, Plaintiff's Counsel represented that he was unable to produce Lugo for a deposition on the dates that were available for all defense counsel. As a result, Plaintiff was not produced for his deposition until this week on Tuesday, November 19. Defendants flagged for this Court in prior status reports that this may lead to Defendants seeking additional discovery. *See* Dkt. 136 at fn. 1, Dkt. 137. Even still, Defendants could not have

anticipated just how significantly Plaintiff's deposition would change the course of discovery.

Defendants now seek the following depositions:

a. **Re-Opening of the Deposition of Julio Sanchez.** The parties traveled to Philadelphia, PA to depose Mr. Sanchez on November 8, 2024. The transcript has not yet been received but in summary, Mr. Sanchez denied that he was offered anything or threatened to sign his 1998 affidavit. He also denied ever speaking with Lugo, let alone about his affidavit. According to Mr. Sanchez, he decided to do the 1998 affidavit on his own and did it through a law clerk at Western Illinois Correctional Center who went by the name "Nagami." Though Defendants had their suspicions, this testimony was not surprising because prior to his deposition, Lugo had also submitted sworn interrogatories unequivocally stating that he has never communicated with Julio or Efrain Sanchez. (Ex. D, at Interrog. 18.)

Like Mr. Sanchez, Defendants do not yet have the transcript for Plaintiff's November 19th deposition. However, in summary, Lugo did an about-face at his deposition and admitted that he requested a transfer into Western Illinois Correctional Center in 1998, worked with a law clerk named "Nagami" on his case—the very law clerk who Julio testified helped him prepare the affidavit, and spoke with Julio regarding the affidavit prior to it being signed. Based on records, the affidavit was signed less than two weeks after Lugo transferred to Western Illinois Correctional Center. Mr. Lugo also testified that he spoke with Julio at Cook County Jail about the fact that Julio was not going to testify against him at his 1993 trial.

Defendants did not have this knowledge and based on Plaintiff's interrogatory answers, had no way to know to push back on Julio when he denied that these communications occurred. As such, Defendants seek to reopen Mr. Sanchez's deposition to confront him about the alleged meeting he had with Lugo both at the Cook County Jail prior to the trial and at the IDOC prior to signing the affidavit, and the reason that he was not forthcoming in his first deposition. Plaintiff has indicated that they do not oppose this request so long as there is an agreement on the scope of the deposition. Defendants are still waiting for Mr. Sanchez's deposition to be transcribed and request 14 days to formally seek leave to re-open his deposition.

b. **Mark Barreto, Bridget Klytta, Cecilia Nieves, Francisco Colon, Jr., David Rivera, Jesus Vega, Jr., and Anthony Anderson.** Each of these witnesses signed affidavits before Lugo's 1993 trial claiming to know of his whereabouts at the time of the murder. (*See*, Group Ex. C.) Specifically, the affidavits claim that the witnesses were at a going away party for Plaintiff at Lugo's brother's home, and he was in their presence all night. Lugo has not disclosed these witnesses as persons he may call at trial in this case, and prior to Lugo's deposition, Defendants had made a decision not to seek the depositions of these individuals.

    To the shock of Defendants, Lugo admitted in his deposition that the affidavits are false – he cannot say he was at his brother's house at the time of the murder, there was no party that night, Lugo had no plan to go to New York until he learned he was wanted for murder, and he was not with these witnesses on the evening of July 19. Lugo admitted to being the architect of the false affidavits—asking his girlfriends Bridget Klytta and Gidget Ruiz (now deceased) to obtain affidavits from people who were willing to provide him with an alibi. When asked if he was surprised that Barretto, Colon, Rivera, Vega, and Anderson were willing to lie under oath for him he was adamant that it was no surprise because they are all members of the Imperial Gangsters together.

    Lugo fully admitted—rather unremorsefully—that he was ready and willing to present this perjured testimony at his criminal trial and that his fellow gang members were happy to supply him with the false testimony needed to assist Lugo's criminal case.

    In light of Lugo's extraordinary admissions that he specifically solicited false testimony from these affiants in an effort to defraud the court, and that their membership in the same gang made this all possible are relevant to this case, Plaintiff's credibility, the credibility of two witnesses disclosed by Plaintiff who were also Imperial Gangsters (Joel Valentin and Ray Graciano), Julio's refusal to testify at the 1993 trial, and the affidavits which Lugo obtained from Efrain and Julio. As such, Defendants are now seeking to depose these individuals.

c. **Ralph Lugo, Jr.** Mr. Lugo is Plaintiff's older brother. Plaintiff testified in his deposition that he stayed with Ralph the entire time he was hiding in New York City attempting to evade arrest, and that Plaintiff never relayed to Ralph, or anyone else, why he suddenly appeared in New York. The deposition of Ralph Lugo is essential to explore Plaintiff's version of events and credibility.

d. **Fed. R.Civ.P. 30(b)(6) to the Illinois Department of Corrections**. Defendants seek to issue a Notice to IDOC for a 30(b)(6) deposition on topics related to three issues: (1) Julio's gang activity in prison; (2) Lugo's gang activity in prison; and (3) information related to laying the foundation for three separate conversations in which Lugo is documented as admitting to killing Michael Velez. (See, the Notice, attached as Ex. E.) This deposition is particularly critical in light of Lugo's denial that he made the statements documented by the IDOC and his vehement denial that he had any leadership role in the Imperial Gangsters in prison which is directly contradicted by myriad of IDOC records identifying him as a known leader and even at times, the institutional leader. Lugo—who has already demonstrated a propensity and willingness to lie in an effort to advance his case—would have significant motive to lie about the level/rank of gang membership—and in turn power—he had in prison at the time that he is obtaining recant affidavits from two other inmates.

    e. **David Perez.** Mr. Perez is the brother of the victim, Michael Velez. Lugo testified in his deposition that the two got into a fight at the Cook County Jail while Lugo was awaiting trial. Lugo also testified that he discussed the case with Perez and shared paperwork with him. These communications were responsive to Defendants' written discovery requests but were not disclosed prior to the deposition. (Ex. D at Interrog. 16.)

15. Plaintiff's Counsel has indicated that, with the exception of Julio Sanchez, they oppose this request because of the upcoming discovery closure deadline. Defendants are disappointed that Plaintiff has chosen to take this position in light of Lugo's very recent testimony. Fraud on the court is serious—it is not the sort of issue that the culpable party should attempt to run out the clock on, which is apparently what is happening here. Defendants—and this Court—are entitled to fully explore this issue to determine just how far-reaching Plaintiff's attempts to suborn perjury span, and to what degree it has tainted the instant proceedings. Defendants have worked diligently with Plaintiff to move this case forward and will be severely prejudiced if deprived of the opportunity to fully explore this issue. Notably, Plaintiff is seeking to take five depositions of his own after the November 29 closure date. Defendants have not opposed that request despite the fact that several of those witnesses—all of whom were disclosed in the parties' initial witness disclosures—were never served until the end of discovery.

16. Defendants also seek to conduct the following discovery following the November 29 closure:

    a. One of Plaintiff's admissions to the murder occurred on a phone call. Defendants seek to subpoena IDOC for that phone call. (*See*, Ex. F.)

    b. Defendants are moving to compel the unredacted call logs from IDOC to narrow what prison calls Defendants will request. At a minimum, Lugo admitted to talking to witness Ray Graciano while he was in IDOC, a fellow Imperial Gangster and witness at his criminal trial. We anticipate seeking all calls between Graciano and Lugo while he was in prison.

    c. Leave to issue Requests to Admit to Plaintiff based on his deposition testimony.

8

17. Finally, Defendants are requesting 90 days to complete this discovery because of the intervening holidays and the scheduling difficulties that have arisen due to Counsel's professional obligations and deadlines across several cases. The undersigned currently have numerous depositions in the following cases in December 2024:

- *Munoz v. Guevara, et al.*, Case No. 23-cv-3210 pending in the Northern District of Illinois (All Counsel)
- *Martinez v. Guevara, et al.*, Case No. 24-cv-5354 pending in the Northern District of Illinois (All Counsel)
- *Diaz v. Chicago,* Case No. 23-CV-2575 pending in the Northern District of Illinois (All Counsel)
- *Alexis Novick v. Village of Bourbonnais,* Case No. 22-CV-2259, pending in the Central District of Illinois (Ms. Ranum)
- *Wilson v. Sauk Village,* Case No. 23L11199 pending in the Circuit Court of Cook County (Ms. Ranum) (tentative dates blocked off in December 2024 by several parties but not yet confirmed)
- *Brown v. City*, Case No. 23-cv-2237 pending in the Northern District of Illinois (Ms. Boekeloo)
- *Reed v. Zuley*, Case No. 23-cv-17186 pending in the Northern District of Illinois (Ms. Boekeloo)
- *Rivera v. Guevara*, Case No. 23-cv-1743 pending in the Northern District of Illinois (Ms. Boekeloo)

WHEREFORE, the parties request that the Court grant their motion and extend fact discovery to February 28, 2025 to conduct the discrete pieces of discovery enumerated in this motion.

Dated: November 22, 2024                    Respectfully Submitted,

/s/ Austin Rahe                             /s/ Laura M. Ranum
AUSTIN RAHE                                 LAURA M. RANUM
*One of the Attorneys for Defendant*        *One of the Attorneys for Defendants Riccio,*
                                            *Henk, Gawrys, Yanow, and Figueroa*
*City of Chicago*

Eileen E. Rosen                             James G. Sotos
Catherine M. Barber                         Josh M. Engquist
Theresa B. Carney                           Caroline P. Golden
Austin Rahe                                 Laura M. Ranum
Andrew Grill                                Maurice C. Hunt

9

| | |
|---|---|
| Kelly A. Krauchun<br>Lauren Ferrise<br>Rock Fusco & Connelly<br>333 W. Wacker Drive, 19th Floor<br>Chicago, IL 60606<br>Tel:(312)494-1000<br>arahe@rfclaw.com | Daniel J. McGinnis<br>The Sotos Law Firm, P.C.<br>141 W. Jackson Blvd, Suite 1240A<br>Chicago, IL 60604<br>Tel:(630)735-3300<br>lranum@jsotoslaw.com |

/s/ Molly Boekeloo
MOLLY BOEKELOO
*One of the Attorneys for*
*Defendant Guevara*

Steven B. Borkan
Timothy Scahill
Emily E. Schnidt
Misha Itchhaporia
Molly Boekeloo
Drew E. Wycoff
Andrea F. Checkai
Borkan & Scahill, Ltd
20 S. Clark Street, Suite 1700
Chicago, IL 60603
Tel:(312)580-1030
mboekeloo@borkanscahill.com

10

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 22, 2024, I electronically filed the foregoing **Defendants' Motion to Conduct Additional Discovery After the November 29 Discovery Deadline** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed below.

*Attorneys for Plaintiff*
Arthur R. Loevy
Jonathan I. Loevy
Lauren Carbajal
Ruth Z. Brown
Russell Ainsworth
311 North Aberdeen St, Suite 3
(312)243-5900
arthur@loevy.com
jon@loevy.com
carbajal@loevy.com
ruth@loevy.com
russel@loevy.com

*Attorneys for Reynaldo Guevara*
Steven B. Borkan
Timothy Scahill
Emily E. Schnidt
Misha Itchhaporia
Molly Boekeloo
Borkan & Schaill, Ltd.
20 South Clark Street, Suite 1700
Chicago, IL 60603
(312)580-1030
sborkan@borkanscahill.com
tscahill@borkanscahill.com
eschndit@borkanscahill.com
mitchhaporia@borkanscahill.com
mboekello@borkanscahill.com

*Attorney for City of Chicago*
Eileen E. Rosen
Theresa Carney
Catherine Barber
Austin Rahe
Andrew Grill
Jessica Zehner
Lauren Ferrise
Rock Fusco & Connelly, LLC
333 W. Wacker Drive, 19th Floor
Chicago, IL 60606
(312)494-1000
erosen@rfclaw.com
tcarney@rfclaw.com
cbarber@rfclaw.com
arahe@rfclaw.com
agrill@rfclaw.com
jzehner@rfclaw.com
lferrise@rfclaw.com

/s/ Laura M. Ranum
LAURA M. RANUM
*One of the Attorneys for Defendants Yanow, Riccio, Gawrys, Henk, and Figueroa*

11